08 CV 5264

Jeffrey W. Hagan
Steven D. Greenblatt
CROWELL & MORING LLP
153 E. 53rd Street
New York, New York 10022

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Christiane Celle and Antoine Verglas,  Plaintiffs,  v.  Calypso Christiane Celle Holdings, LLC, Solera Capital LLC, Solera Partners, L.P., Solera Capital GP, L.P., Solera GP, LLC, SCI Partners, L.P., and Solera GP II, LLC  Defendant | Case No.: _____  COMPLAINT  Jury Trial Demanded |

RECEIVED JUN 0 9 2008 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiffs Christiane Celle ("Celle") and Antoine Verglas ("Verglas") (together, "Plaintiffs"), by and through their undersigned attorneys, Crowell & Moring LLP, as and for their Complaint state and allege as follows:

### PRELIMINARY STATEMENT

This case is as simple a breach of contract action as there is. In July 2007, seeking a capital infusion that was to have allowed them to expand the internationally recognized fashion brand that they co-founded in 1992, Plaintiffs sold a majority stake in their business to defendant Solera Capital LLC pursuant to the terms of a Contribution and Sale Agreement. In an attempt to split the risk that the sale would trigger change-of-control/non-assignability provisions in the leases for the business' retail stores, the parties agreed that a portion of the sales price would be withheld from Plaintiffs unless and until the landlords of certain leases consented to their assignment to the newly formed, post-sale company, defendant Calypso Christiane Celle

1

Holdings, LLC ("LLC"). Upon LLC's receipt of landlord consents conforming to the requirements of the Contribution and Sale Agreement, LLC was obligated to release the withheld payment amounts ("Reserve Amounts") to Plaintiffs. Since the execution of the Contribution and Sale Agreement, at least three conforming landlord consents have been received by LLC. Plaintiffs have expressly demanded payment of the corresponding Reserve Amounts, which total $285,000. In a flagrant breach of the Contribution and Sale Agreement, defendants have not only made no payments, but have not even deigned to respond to the Plaintiffs' demand.

## PARTIES

1. Plaintiff Christiane Celle is a citizen of France who presently resides in the State of New York. Ms. Celle is a Member and Member of the Board of Managers of defendant Calypso Christiane Celle Holdings, LLC ("LLC").

2. Plaintiff Antoine Verglas is a citizen of France who presently resides in the State of New York. Mr. Verglas is a Member and Member of the Board of Managers of defendant LLC, and is also presently employed as a consultant to Calypso under a consulting agreement dated as of July 15, 2007.

3. Defendant LLC is a limited liability company organized under the laws of the State of Delaware and with its principal place of business located in the State of New York.

4. Defendant Solera Partners, L.P. is a limited partnership organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and is a Member of defendant LLC.

5. Defendant SCI Partners, L.P. is a limited partnership organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and is a Member of defendant LLC.

6. Defendant Solera Capital GP, L.P. is a limited partnership organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and is the General Partner of defendant Solera Partners, L.P..

7. Defendant Solera GP, LLC is a limited liability company organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and is the General Partner of defendant Solera Capital GP, L.P..

8. Defendant Solera GP II, LLC is a limited liability company organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and is the General Partner of defendant SCI Partners, L.P..

9. Defendant Solera Capital LLC is a limited liability company organized, on information and belief, under the laws of the State of Delaware, with its principal place of business located in the State of New York, and, on information and belief, is the parent entity of each of the foregoing defendants.

## JURISDICTION & VENUE

10. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(2), as the suit is between parties who are citizens of a State and citizens of a foreign state, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because defendant LLC resides and maintains its principal place of business in the State of New York.

## FACTS

12. Plaintiff Christiane Celle is an internationally-renowned fashion designer and businesswoman. In 1992, she and Plaintiff Antoine Verglas opened a clothing boutique called Calypso Christiane Celle on the island of St. Barth. Over the next 15 years, Celle and Verglas expanded this single boutique into a distinctive multi-brand retail and design company that now sells women's and children's clothing, accessories, and luxury home goods in over 30 Calypso Christiane Celle stores located throughout the United States and France.

13. Until July 15, 2007, Celle and Verglas were the sole shareholders and owners of the several business entities though which the Calypso Christiane Celle-related businesses (collectively, the "Calypso Businesses") operated.[1] On that date, however, in exchange for a capital contribution that was supposed to allow them to further expand the Calypso Businesses, Celle and Verglas ceded majority ownership to private equity investment firm Solera Capital LLC pursuant to a Contribution and Sale Agreement and other related agreements.

14. Under the Contribution and Sale Agreement, ownership of the Calypso Businesses was consolidated in a newly-created Delaware limited liability company, defendant LLC. As reflected in both the Contribution and Sale Agreement and the Calypso Christiane Celle Holdings, LLC Amended and Restated Limited Liability Company Agreement dated July 18, 2007 ("LLC Agreement"), Celle and Verglas contributed the issued and outstanding capital stock and membership interests of each of the Calypso Businesses in exchange for cash payments, promises of future payments, and Common Units in the LLC representing, together, an

---

[1] These entities were Calypso St. Barth, Inc.; La Sirene, société à responsabilité limitée ("SARL"); Marguerite, SARL; A&C Licensing, LLC; and Calypso Production, Inc.

approximate 46.5% membership interest in LLC. In exchange for its investment, Solera[2] acquired Series A Preferred Units representing an approximate 53.5% majority membership interest in LLC.

15. One potential source of future payments to Celle and Verglas were payments of "Reserve Amounts" pursuant to Section 3.5 of the Contribution and Sale Agreement. Prior to execution of the Contribution and Sale Agreement, the parties engaged in negotiations and discussions concerning how the parties should allocate the risk that the transaction would constitute a "change of control" or assignment necessitating landlord consent under the terms of any of the Calypso Businesses' leases for retail store space.

16. The compromise that the parties arrived at was essentially to reduce the amount of cash paid to Celle and Verglas at the closing of the transaction to reflect the risk that certain landlords might not consent to the assignment of their leases to LLC post-transaction. Pursuant to Section 3.5, however, Celle and Vergals were entitled to collect post-closing payments from LLC to make up for this reduction upon LLC's receipt of the consent of certain landlords to the assignment of the subject lease. A landlord's consent would only trigger a right to payment under Section 3.5 if it met the terms and conditions of Contribution and Sale Agreement, which defined "Landlord Consent as follows:

> "<u>Landlord Consent</u>" means a consent from a landlord listed on <u>Appendix A</u> in respect of a Non-Consenting Lease, substantially in the form attached hereto as <u>Exhibit C</u>, with such changes or conditions as do not in any material adverse respect affect the benefits of such lease to the tenant or result in higher rent, or in

---

[2] The Units were acquired by defendants Solera Partners, L.P. and SCI Partners, L.P., each of which is, on information and belief, a wholly owned subsidiary of Defendant Solera Capital LLC. Hereinafter, the term "Solera" will be used to refer collectively and individually to each of these defendants, and to defendants Solera Capital GP, L.P. (the general partner of Solera Partners L.P.), Solera GP, LLC (general partner of Solera GP, L.P.), and Solera GP II, LLC (general partner of SCI Partners, L.P.)

such other form (including in a form submitted by the landlord), which is to similar effect. The parties acknowledge and agree that a requirement that the LLC, if requested by a landlord, guaranty a lease or that Christiane Celle will, immediately after Closing, continue (without reference to a specific time period) to serve in a leadership position with the Business will not constitute unacceptable conditions for a landlord's consent.

17. As referenced in the definition of Landlord Consent and in Section 3.5, not all pre-closing leases were subject to the above-mentioned negotiation and deferred payment opportunity. Rather, the parties agreed upon a list of landlords/leases (defined in the Agreement as "Non-Consenting Leases") and, as to each such landlord/lease, a corresponding cash-at-closing reduction/post-landlord-consent payment amount (the "Reserve Amount"). A complete list of such Non-Consenting Leases and Reserve Amounts is set forth in Exhibit A to the Contribution and Sale Agreement.

18. Several months after the closing, LLC received landlord consents with respect to at least three Non-Consenting Leases identified on Exhibit A to the Contribution and Sale Agreement: Waterside at Pelican Bay LLC ("Waterside"), Bal Harbour Shops ("Bal Harbour"), and Biltmore Shopping Center Partners LLC ("Biltmore").

19. Each of the consents received by LLC met the definition of a Landlord Consent under the Contribution and Sale Agreement, and thus obligated LLC to make payments of the corresponding Reserve Amounts to Celle and Verglas.

20. On March 18, 2008, Plaintiffs demanded payment of the $285,000 Reserve Amount they were entitled to under the Contribution and Sale Agreement by virtue of the Waterside, Bal Harbour, and Biltmore Landlord Consents received by LLC.

21. Defendants have not made any payment of any Reserve Amounts to Plaintiffs. In fact, Plaintiffs have received no response of any kind to their demand for payment.

## CLAIMS

### Count 1 – Breach of Contract

22. Plaintiff incorporates by reference paragraphs 1 through 21 as if fully set forth herein.

23. Plaintiffs and Defendants are parties to the Contribution and Sale Agreement.

24. Pursuant to Section 3.5 of the Contribution and Sale Agreement, upon LLC's receipt of a Landlord Consent, LLC has a duty to pay Plaintiffs the corresponding Reserve Amount set forth in Exhibit A to the Contribution and Sale Agreement.

25. Following the execution of the Contribution and Sale Agreement, LLC received at least three Landlord Consents, triggering LLC's duty to pay Plaintiffs the corresponding Reserve Amounts as set forth in Exhibit A to the Contribution and Sale Agreement.

26. Despite Plaintiffs' demand for payment of the Reserve Amounts associated with such Landlord Consents, Defendants have made no such payments.

27. Defendants' failure to make the aforementioned payments constitutes a breach of Section 3.5 of the Contribution and Sale Agreement.

28. Plaintiffs have been damaged by Defendants' breach in an amount to be determined by the Court, but in no event less than $285,000, plus interest, costs, and fees.

### Count 2 – Attorneys' Fees

29. Plaintiff incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30. Plaintiffs and Defendants are parties to the Contribution and Sale Agreement.

31. Section 11.5 of the Contribution and Sale Agreement provides that "In the event any suit in law or equity is instituted by any party to enforce or interpret any part of this Agreement, or to recover damages for breach of this Agreement, the prevailing party shall be entitled to recover

costs of suit incurred therein, and to also recover reasonable attorneys' fees incurred by such prevailing part [sic.] in connection therewith."

32. Should Plaintiffs prevail on Count 1 of this Complaint, they will be entitled to an award of costs and attorneys fees in accordance with the terms of Section 11.5 of the Contribution and Sale Agreement, in an amount to be determined by the Court.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court to enter judgment against Defendants, as follows:

(a) an award of actual damages, both compensatory and consequential, in an amount to be determined by the Court;

(b) reasonable attorneys' fees and costs;

(c) prejudgment and post-judgment interest at the highest rate(s) allowed by law; and

(d) such further relief as this Court may deem appropriate and to which Plaintiffs are entitled.

Dated: June 9, 2008

Respectfully Submitted,

CROWELL & MORING LLP

By: _____
Jeffrey W. Pagano (JP-1408)
Steven D. Greenblatt (SG-5105)
153 E. 53rd Street
New York, New York 10022
(212) 223-4000

Attorneys for Plaintiffs Christiane Celle and Antoine Verglas