Steven E. Obus
PROSKAUER ROSE LLP
1585 Broadway
New York, New York  10036-8299
Attorneys for Defendants and Counterclaim-Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           )

Christiane Celle and Antoine Verglas,        )

                                            )

      Plaintiffs and Counterclaim-Defendants,   )     **ANSWER AND**
                                            )     **<u>COUNTERCLAIM</u>**

                  v.                )

                                            )     **08 Civ. 5264 (RJS)**

Calypso Christiane Celle Holdings, LLC,    )
Solera Capital LLC, Solera Partners, L.P.,   )
Solera Capital GP, L.P., Solera GP, LLC,   )
SCI Partners, L.P., and Solera GP II, LLC,   )

                                            )

      Defendants and Counterclaim-Plaintiffs.   )

                                            )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Defendants and Counterclaim-Plaintiffs Calypso Christiane Celle Holdings, LLC

("CCCH"), and Solera Capital LLC, Solera Partners, L.P., Solera Capital GP, L.P., Solera

GP LLC, SCI Partners, L.P., and Solera GP II, LLC (collectively, the "Solera

Defendants" and, with CCCH, "Defendants and Counterclaim-Plaintiffs"), by and

through their undersigned attorneys, Proskauer Rose LLP, for their Answer to the

Complaint of Plaintiffs Christiane Celle ("Celle") and Antoine Verglas ("Verglas")

(collectively "Plaintiffs" and "Counterclaim-Defendants") and for their Counterclaim,

allege as follows:

## ANSWER

In response to the unnumbered "Preliminary Statement" in the Complaint, Defendants deny Plaintiffs' assertion that this is "as simple a breach of contract action as there is." Contrary to Plaintiffs' allegations, Defendant CCCH has in fact made "Reserve Amount" payments to Plaintiffs under the referenced Contribution and Sale Agreement, and no other Defendant contracted to do so. The further amounts that Plaintiffs claim are still owed to them under the Contribution and Sale Agreement are dwarfed by the far larger amounts that Plaintiffs owe to CCCH and to the other Defendants under that same Agreement. Plaintiffs Celle and Verglas have, moreover, caused, and are continuing to cause, severe injury to all Defendants for which they are liable. As alleged more fully below, Plaintiffs have engaged in a continuing course of misconduct, including numerous misrepresentations to the Defendants and affirmative efforts to disrupt and damage the business of Defendant CCCH. Plaintiffs' actions are in furtherance of a scheme that involved first overstating the value of their companies so that the Solera Defendants would pay an inflated price to acquire a majority interest in them, and then acting to diminish or destroy that value through, inter alia, the misuse and misappropriation of CCCH assets, the solicitation of CCCH employees to leave their employ, the misuse of confidential CCCH information and the disruption of CCCH operations, so that Plaintiffs might eventually repurchase that interest at a substantial discount. As Plaintiffs are well aware, there is already pending an arbitration proceeding between Celle and CCCH in which claims by CCCH against Celle, based on misconduct similar to the misconduct described above, but arising from her material breaches of the Employment Agreement under which she held the position of Chief Executive Officer of CCCH, are to be separately adjudicated. CCCH has also provided written notice to Verglas that he has

2

engaged in deliberate misconduct in violation of his contractual undertakings and of his

fiduciary obligations to CCCH.  Thus, Plaintiffs are well aware of the reasons why they

have not received further payments.  In short, it is Plaintiffs who are liable to Defendants

in this action, in an amount no less than fifteen million dollars.  By their counterclaims

below, Defendants seek, as Counterclaim-Plaintiffs, the recovery of those damages, their

attorneys fees in this action, and preliminary and permanent injunctive relief prohibiting

Plaintiffs and Counterclaim-Defendants Celle and Verglas from continuing to interfere

with the business of CCCH.

For their responses to the numbered paragraphs in Plaintiffs' Complaint,

Defendants state as follows:

1.      Admit the allegations contained in paragraph 1 of the Complaint.

2.      Admit the allegations contained in paragraph 2 of the Complaint.

3.      Admit the allegations contained in paragraph 3 of the Complaint.

4.      Admit the allegations contained in paragraph 4 of the Complaint.

5.      Admit the allegations contained in paragraph 5 of the Complaint.

6.      Admit the allegations contained in paragraph 6 of the Complaint.

7.      Admit the allegations contained in paragraph 7 of the Complaint.

8.      Admit the allegations contained in paragraph 8 of the Complaint.

9.      Deny the allegations contained in paragraph 9 of the Complaint, except admit that Solera Capital LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the state of New York.

10.      Paragraph 10 of the Complaint contains allegations of law to which no answer is required.  Defendants admit that Plaintiffs are citizens of a foreign state and that Defendants are citizens of domestic states, and that Plaintiffs' demand exceeds $75,000, but deny that Plaintiffs are entitled to any payment of any claim.

11.      Paragraph 11 of the Complaint contains conclusions of law to which no answer is required.  Defendants admit that defendant CCCH maintains its principal place of business in the State of New York.

12.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12, except admit that Plaintiff Celle is a fashion designer and businesswoman, and that she and Plaintiff Verglas were the owners, through various companies, of over 30 boutique stores in the United States and France that sell women's and children's clothing, accessories and luxury home goods.

13.      Admit the allegations contained in the first sentence of paragraph 13 of the Complaint.  With respect to the second sentence thereof, admit that, on July 15, 2007, Plaintiffs entered into a Contribution and Sale Agreement under which they ceded majority ownership in the Calypso Businesses to Solera Partners, L.P. and SCI Partners, L.P., and refer the Court to that Agreement for a complete statement of its contents.

14.     With respect to the allegations contained in paragraph 14 of the Complaint, admit that Plaintiffs entered into the Calypso Christiane Celle Holdings, LLC Amended and Restated Limited Liability Company Agreement dated July 18, 2007 ("LLC Agreement"), refer the Court to that Agreement for a complete statement of its contents, and admit that Plaintiffs, together with their affiliate, Calypso Productions, Inc., acquired among them approximately 46.5% of the membership interests in CCCH, and that Solera Partners, L.P. and SCI Partners, L.P. acquired between them approximately 53.5% of the membership interests in CCCH.

15.     With respect to the allegations contained in paragraph 15 of the Complaint, admit that the parties to the Contribution and Sale Agreement engaged in negotiations preceding their execution of that Agreement concerning the potential need for obtaining landlord consents under the terms of the Calypso Business store leases, and refer the Court to Section 3.5 of the Contribution and Sale Agreement for a complete statement of its contents.

16.     Deny the allegations contained in paragraph 16 of the Complaint and refer the Court to the Contribution and Sale Agreement for a complete statement of its contents, but admit that the quotation from the Contribution and Sale Agreement is accurate.

17.     With respect to the allegations contained in paragraph 17 of the Complaint, refer the Court to the Contribution and Sale Agreement for a complete statement of its contents, and admit that Exhibit A thereto contains a complete list of Non-Consenting Leases and Reserve amounts.

18.　　Admit the allegations contained in paragraph 18 of the Complaint.

19.　　With respect to paragraph 19 of the Complaint, admit that the consents referenced in paragraph 18 met the definition of a Landlord Consent, but deny that CCCH was obligated to make payments to Plaintiffs.

20.　　Admit the allegations contained in paragraph 20 of the Complaint.

21.　　Deny the allegations contained in paragraph 21 of the Complaint, except admit that Defendants have not made payments to Plaintiffs with respect to Waterside, Bal Harbour or Biltmore.

22.　　In response to paragraph 22 of the Complaint, incorporate by reference their responses to paragraphs 1 through 21 thereof as if fully set forth herein.

23.　　With respect to the allegations contained in paragraph 23 of the Complaint, admit that Plaintiffs and Defendants Solera Partners, L.P. and SCI Partners, L.P. are parties to the Contribution and Sale Agreement, but deny that any other Solera Defendant is a party to that Agreement.

24.　　Deny the allegations contained in paragraph 24 of the Complaint, and refer the Court to the Contribution and Sale Agreement for a complete statement of its contents.

25.　　Deny the allegations contained in paragraph 25 of the Complaint, except admit that the LLC received at least three Landlord Consents.

26.      Deny the allegations contained in paragraph 26 of the complaint, except

admit that Defendants have made no payments to Plaintiffs with respect to Waterside,

Bal Harbour or Biltmore.

27.      Deny the allegations contained in paragraph 27 of the Complaint.

28.      Deny the allegations contained in paragraph 28 of the Complaint.

29.      In response to paragraph 29 of the Complaint, incorporate by reference

their responses to paragraphs 1 through 28 thereof as if fully set forth herein.

30.      With respect to the allegations contained in paragraph 30 of the

Complaint, admit that Plaintiffs and Defendants Solera Partners, L.P. and SCI Partners,

L.P. are parties to the Contribution and Sale Agreement, but deny that any other Solera

Defendant is a party to that Agreement.

31.      Admit that the quotation in paragraph 31 of the Complaint from

Section 11.5 of the Contribution and Sale Agreement, concerning attorney fees, is

accurate, but deny that Plaintiffs are entitled to any such fees.

32.      The allegations contained in paragraph 32 of the Complaint contain

conclusions of law to which no answer is required but, insofar as an answer is deemed

required, deny the allegations contained therein.

## AFFIRMATIVE DEFENSES

33.      The Complaint, in whole or part, fails to state a claim upon which relief

may be granted.

34.    The Plaintiffs are liable to the Defendants in amounts greater than the amounts Plaintiffs claim against the Defendants.

## COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 34 as if fully set forth herein.

### The Contribution and Sale Agreement

35.    In the Contribution and Sale Agreement, Counterclaim-Defendants Celle and Verglas (denominated as "Shareholders" therein) made representations and warranties to Solera Partners, L.P. and SCI Partners, L.P. (denominated as "Investors" therein).

36.    In Section 4.19 of the Contribution and Sale Agreement, Celle and Verglas confirmed that: "The representations and warranties of the Shareholders contained in this Agreement, the Transaction Documents, the certificates delivered at Closing and the Shareholder Disclosure Schedules are accurate and complete in all material respects, and do not contain any untrue statement of a material fact or, considered in the context in which presented, omit to state a material fact necessary in order to make the statements and information contained therein not misleading." Relying on these representations and warranties, the Investors paid the "Purchase Price" to CCCH, which in turn paid the Shareholders $17 million, less certain offsets, in exchange for a 53.5 percent interest in companies theretofore wholly owned by Celle and Verglas (the "Calypso Companies"). Counterclaim-Plaintiffs have come to learn, however, that

8

Counterclaim-Defendants' material representations and warranties were in fact false in many respects.

37.    Among the representations and warranties made by Celle and Verglas in the Contribution and Sale Agreement was the representation in Section 4.6 that the financial statements of the Calypso Companies were accurate and complete in all material respects: "The Financial Statements are complete and correct in all material respects, are in accordance with the books of account ledgers and other accounting records of the applicable Companies, and [with exceptions not relevant here], present fairly, and in accordance with GAAP, the financial position, results of operations and cash flows of the [] Companies. . . ."

38.    Regarding taxes, Celle and Verglas further represented in Section 4.16(a) that "All taxes due or claimed to be due from any Company (whether or not shown on any Return) have been paid except with respect to those matters contested by a Company in good faith for which an adequate reserve has been established on the Financial Statements and which had been identified in Section 4.16(a) of the Disclosure Schedule." Celle and Verglas further represented in Section 4.16(d) that taxes for all employees or independent contractors, among others, had been properly withheld and that "each of the Companies has complied in all respects with all reporting and record keeping requirements." And, in Section 4.16(j) they represented that "the amount of Taxes reflected as a liability on the Financial Statements of the applicable Companies is a full and adequate reflection of accrued and unpaid Taxes as of the date of such Financial Statement. . . ."

9

39.     In the "Employee Relations" Section, Section 4.12, Celle and Verglas further represented that the Calypso Companies were in compliance with all pertinent employment laws and, in Section 4.15, that they were in compliance with all other applicable laws generally:  "Except as otherwise set forth in Section 4.15 of the Disclosure Schedule, the Companies have complied and are in compliance in all material respects with all Applicable Laws, and, to the Calypso Parties' Knowledge, no Proceeding or notice has been filed, given, or commenced against any Company alleging any such violation or failure to comply."  (See also Section 4.14 except as otherwise disclosed, "no Proceeding [was] pending or . . . threatened against any Company, or affecting any Asset of any Company (including, without limitation any Permits), or any shareholder, member, director, officer or employee of any Company in connection with the Business, which individuall[]y or in the aggregate would reasonably be expected to have a Material Adverse Effect."

40.     With respect to the Companies' ability to continue, unimpeded, in its business post-closing, in Section 4.9 Celle and Verglas represented that, other than as disclosed therein, there were no contracts that:  "(f) . . . restrict[ed] any Company from freely engaging in business or competing anywhere" or which were "(h) . . . otherwise material to any Company."  In Section 4.10(a), Celle and Verglas represented they had taken reasonable steps to protect the Calypso Companies' trademarks and, in Section 4(f), that, except as otherwise disclosed, the Calypso Companies had taken reasonable steps to ensure that they had not "interfered with, infringed upon, misappropriated, misused or otherwise come into conflict with any Intellectual Property right of any Person," and that, to their knowledge, there was "no such interference, infringement, misappropriation,

misuse or conflict in connection with the operation of the Business," and that they had

not been "threatened or notified, either orally or in writing, of interfering,

misappropriating or otherwise conflicting with any Intellectual Property right of any

Person."

41.    Contrary to the representations and warranties, the financial statements

were materially false in numerous respects, including with respect to the Calypso

Companies' inventory and regarding their tax and rent expenses.  Among other things,

Celle and Verglas:

        a.      Misrepresented the value of inventory on hand at the time of closing by at least $1.4 million;

        b.      Understated the Calypso Companies' historical rent expense by at least $845,000;

        c.      Misrepresented that the Calypso Companies' real estate tax obligations had been fully discharged when in fact at least $183,000 remained unpaid; and

        d.      Misrepresented that at least $430,000 worth of inventory had been paid for when in fact it had not.

42.    In addition to overstating the value of the Calypso Companies' assets and

understating the magnitude of the Calypso Companies' liabilities by these amounts, these

misrepresentations materially inflated the apparent profitability of the Calypso

Companies' operations in the period prior to the sale, and thus materially inflated the

apparent overall value of the Calypso Companies, and therefore the Purchase Price.

43.    The representations with respect to the Calypso Companies' intellectual

property rights and the pendency or threat of any proceeding were also false.  In

contravention of the representations that Celle and Verglas had taken reasonable steps to protect the Calypso Companies' intellectual property, including the Calypso trademark, that the Calypso Companies were free to compete anywhere, and that there had been no infringement or threat of a claim of infringement, Celle had, on information and belief, already contracted away rights to use the Calypso name on merchandise in St. Barth's, and Celle and Verglas were aware that action to enforce such rights could be taken. The representation concerning the absence of pending claims was also false.

**The LLC Agreement**

44.     In connection with the purchase and sale of the majority interest in the Calypso Companies under the Contribution and Sale Agreement, Solera Partners, L.P., SCI Partners, L.P., Celle and Verglas, as well as CCCH, also entered into the Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") – one of the "Transaction Documents" identified in the Contribution and Sale Agreement. Pursuant to the LLC Agreement, Celle and Verglas became Members of CCCH and were appointed as two of the five members of the Board of Managers. (See Page 1, and section 6.2 of the LLC Agreement).

45.     By virtue of their positions as Members of CCCH and of its Board of Managers, Celle and Verglas were subject to certain express obligations and limitations in the LLC Agreement as well as general fiduciary obligations.

46.     Pursuant to Section 6.5(e) of the LLC Agreement, only the Board, together with at least a Majority in Interest of the Investors, was authorized to approve the adoption of CCCH's annual budget, the opening of any new stores, the entry into any real

estate leases, or any expenditure exceeding by $25,000 the amount budgeted therefor.

Pursuant to Section 6.5(h) of the LLC Agreement, only the Board, together with at least a

Majority in Interest of the Investors, was authorized to approve paying any employee

more than $90,000 per year.  As set forth below, Celle and Verglas violated these

contractual obligations and, in doing so, also violated their fiduciary obligations to CCCH

and its affiliates.

47.     Section 7.8 of the LLC Agreement provides that, until July 18, 2012, Celle

and Verglas may not, directly or indirectly,

> (a) organize, own, manage, operate, join, control, finance or participate
> in, or assist any other Person in, the ownership, management, operation,
> control or financing of . . . any business enterprise or other entity
> engaged anywhere in, or in competition with, the then current business
> or operations of [CCCH] or any Operating Entity, . . .(b) solicit or
> employ . . . any employees of [CCCH] or any Operating Entity, or
> (c) divert, take away or attempt to take away any of the then current
> customers or the business of such customers of [CCCH] or any
> Operating Entity . . . or in any way interfere with, disrupt or attempt to
> disrupt any then existing or prospective relationships between [CCCH]
> or any Operating Entity and any of their respective customers,
> suppliers, or other Persons with whom they deal, or contact or enter
> into any business transaction in competition with the then current
> business operations of [CCCH] or any Operating Entity with any such
> customers, suppliers or other Persons for any purpose.

48.     Section 7.8 of the LLC Agreement further recites that the foregoing

prohibitions "were a material inducement to the Investors to enter into the Contribution

and Sale Agreement," and that any violation of these prohibitions "may result in

irreparable injury to [CCCH] and the other Members for which damages may not be an

adequate remedy."  Accordingly, Celle and Verglas agreed therein that "in the event of a

breach or threatened breach of any such agreement by [them], [CCCH] and the other

Members shall be entitled to seek to obtain preliminary and permanent injunctive relief without proof of actual damages or posting of any bond or other security."

49.    The Contribution and Sale Agreement and the LLC Agreement were intended to promote the stability, success and growth of the Calypso enterprise under the umbrella of CCCH.  Rather than support those objectives, however, Celle and Verglas implemented a scheme to subvert CCCH's business and thereby to reduce its value, in anticipation of repurchasing the majority interest in CCCH at a substantially reduced price, all in violation of both their contractual commitments and their fiduciary obligations as owners and board members of CCCH.

50.    In implementing their scheme, Celle and Verglas engaged in a continuous course of improper and dishonest conduct, in violation of the above-described contractual provisions, including, but not limited to:

a.    Encouraging CCCH employees to leave the Company;

b.    Sharing confidential CCCH employee information with other employees in order to foment discord;

c.    Granting unauthorized salary increases exceeding, in the aggregate, $250,000;

d.    Causing the Company to overbuy inventory by approximately $2.5 million and thereby draining the Company of required capital, leaving it without the resources to expand, and requiring it to borrow funds to maintain operations – borrowings that could be obtained only upon personal guarantees provided exclusively by the Solera Defendants, since Celle and Verglas, having manufactured the cashflow shortfall, refused to participate in its amelioration;

e.    Using CCCH resources and personnel to purchase and install equipment and furnishings for new stores that had never been approved by the Board, instructing CCCH employees to conceal

14

from the Solera Defendants information concerning those stores and concerning the operation of CCCH, and planning to "attack" the Solera Defendants once it became apparent that their covert misconduct would be exposed;

f.    seeking and obtaining advice adverse to CCCH from counsel engaged by, and ostensibly acting for, CCCH; and

g.    Planning to compete against CCCH out of a new store in St. Barth's, on the theory that, because the sign on the store would not identify Calypso, Solera would not "see it too quickly."

51.    Section 10(a) of the Contribution and Sale Agreement, entitled "Indemnification," provides in part that:

> The Calypso Parties [including Celle and Verglas] shall jointly and severally indemnify the LLC and each Investor and each of their respective officers, directors . . . and Affiliates (collectively the "Indemnified Parties") for, and hold each Indemnified Party harmless from and against any and all damages, losses, Taxes, claims and settlement, and any and all out-of-pocket costs and expenses of any and every kind, including without limitation, reasonable fees and disbursements of counsel . . . for such Indemnified Parties but excluding any punitive damages (collectively "Losses"), all of which expenses periodically shall be reimbursed as incurred, in each case, arising out of or suffered or incurred in connection with any of the following: (i) any misrepresentation or any breach of any warranty made by any Calypso Party herein or in any of the other Transaction Documents, (ii) any breach or non-fulfillment of any covenant or agreement made by any Calypso Party herein or in any of the other Transaction Documents. . . .

52.    Section 11.5 of the Contribution and Sale Agreement provides that:

> In the event any suit in law or equity is instituted by any party to enforce or interpret any part of this Agreement, or to recover damages for breach of this Agreement, the prevailing party shall be entitled to recover costs of suit incurred therein, and to also recover reasonable attorneys' fees incurred by such prevailing party in connection therewith.

## FIRST CAUSE OF ACTION
### (for breach of contract – Contribution and Sale Agreement)

53.      Counterclaim-Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.      By reason of the Counterclaim-Defendants' breaches of the foregoing representations and warranties in the Contribution and Sale Agreement, Celle and Verglas are liable to Counterclaim-Plaintiffs for damages in an amount to be determined at trial, but believed to be in excess of $10 million.

## SECOND CAUSE OF ACTION
### (for breach of contract – LLC Agreement)

55.      Counterclaim-Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 54 above as if fully set forth herein.

56.      By reason of Counterclaim-Defendants' breaches of the foregoing provisions in the LLC Agreement, Counterclaim-Defendants Celle and Verglas are liable to Counterclaim-Plaintiffs for damages in an amount to be determined at trial, but believed to be in excess of $5 million.

57.      In addition, by the above-described actions Counterclaim-Defendants' actions have caused, and will continue to cause, Counterclaim-Plaintiffs immediate and irreparable harm.

58.      Plaintiffs' have no adequate remedy at law.

59.     Plaintiffs are therefore entitled to preliminary and permanent injunctive relief preventing further violations by Celle and Verglas of their contractual obligations.

### THIRD CAUSE OF ACTION
### (for breach of fiduciary duties)

60.     Counterclaim-Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 59 above as if fully set forth herein.

61.     Counterclaim-Defendants owed fiduciary duties of trust, confidence and loyalty to CCCH by virtue of their positions, duties and responsibilities as Members of CCCH and as members of its Board of Directors.

62.     Counterclaim-Defendants breached their fiduciary duties to CCCH by, among other things, scheming to subvert its business, as alleged above.

63.     Counterclaim-Defendants acted maliciously and with willful and wanton disregard for Counterclaim-Plaintiffs' rights.

64.     By reason of the foregoing, Counterclaim-Defendants are liable to Counerclaim-Plaintiffs for damages in an amount to be determined at trial, but believed to be in excess of $10 million.

WHEREFORE, Defendants and Counterclaim-Plaintiffs respectfully request that the Court enter judgment:

    a.      Dismissing the Complaint in its entirety, with prejudice;

    b.      Awarding Defendants and Counterclaim-Plaintiffs damages in an amount of not less than $15 million, with applicable interest;

17

c.      Awarding a preliminary and permanent injunction prohibiting Plaintiffs and Counterclaim-Defendants from further interfering in the business of CCCH;

d.      Awarding Defendants and Counterclaim-Plaintiffs their attorneys' fees and costs in this action; and

e.      Awarding such other and further relief as the Court deems just and proper.

Dated:  July 1, 2008

Respectfully submitted,

PROSKAUER ROSE LLP
Attorneys for Defendants and
Counterclaim-Plaintiffs

By:     /s/ Steven E. Obus
        Steven E. Obus

1585 Broadway
New York, New York  10036-8299
(212) 969-3000